# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ANGEL GARCIA,

    Plaintiff

v.

J. WEILAND, et al.,

    Defendants

Case No.: 3:21-cv-00356-MMD-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 50

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 50, 50-1 to 50-6, 52-1 to 52-6.) Plaintiff filed a response. (ECF No. 67.) Defendants filed a reply. (ECF No. 70.)

After a thorough review, it is recommended that Defendants' motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. .7) The events giving rise to this action took place while Plaintiff was housed at Warm Springs Correctional Center (WSCC) and Ely State Prison (ESP). (*Id.*) Plaintiff was proceeding pro se when he initiated this action, but is currently represented by counsel.

The court screened Plaintiff's complaint and allowed him to proceed with an Eighth Amendment excessive force claim against Defendants Weiland, Johnson, Willhite (named by Plaintiff as Wilheir), Kleer, Searle (named by Plaintiff as Sears), Arozaga (named by Plaintiff as

Arizaga), Rigney, Reubart, Brandon, and John Doe 1. Plaintiff was also allowed to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Weiland, Johnson, Willhite, Kleer, Searle, Arozaga, Rigney, and John Doe 1. (ECF Nos. 6, 34, 36.) Defendant Brandon was dismissed without prejudice for lack of timely service under Federal Rule of Civil Procedure 4(m). (ECF No. 58.)

Plaintiff alleges that following an assault on a staff member at WSCC, Weiland and Johnson deliberately put handcuffs on Plaintiff too tightly. Plaintiff alleges that he asked Weiland, Johnson, Willhite, Kleer, Searle, and John Doe 1 to loosen the handcuffs, and they refused. As a result, Plaintiff claims that his hands swelled, causing him excruciating pain. Then, once he arrived at ESP, he avers that he was slammed to the ground and taken to a cell where he was kicked and punched, all while he was restrained and not posing any danger to the officers. Plaintiff alleges that Kleer, Arozaga, Weiland, Rigney, Johnson, and Reubart all participated in or witnessed the use of force and failed to intervene. Plaintiff further avers that he asked Weiland, Johnson, Willhite, Kleer, Searle, Arozaga, Reubart, Rigney, and John Doe 1 for medical treatment, but they refused.

Defendants move for summary judgment, arguing that they are entitled to qualified immunity and no constitutional violation occurred. Defendants contend there is no evidence excessive force was used against Plaintiff. They further argue there is no evidence to show he ever had a serious medical need, and even if he did, Defendants were not deliberately indifferent to such need.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

///

///

///

# III. DISCUSSION

## A. Rule 56(d)

Plaintiff's counsel submits a declaration where it is requested (though not argued in the response itself) that Plaintiff be permitted to perform limited discovery to further support his response to Defendants' motion for summary judgment. The declaration states that good cause supports this request because Plaintiff has been a pro se incarcerated litigant up to this point. Plaintiff's counsel seeks to take the depositions of Cox, Stubbs, Weiland, Guzman, Brown, and/or Reubart to clarify discovery responses and the use of force report. (ECF No. 67 at 20 ¶ 13.)

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

"Rule 56(d) provides a 'device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence.'" *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002)). "A party seeking additional discovery under Rule 56(d) must 'explain what further discovery would reveal that is essential to justify [its] opposition to the motion[ ] for summary judgment.'" *Id.* (quoting *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980) (alterations original, quotations omitted).

Plaintiff's counsel wants to depose six individuals, however, four of those individuals—

Cox, Stubbs[1], Guzman, and Brown—are not defendants in this action. Nor does Plaintiff's counsel explain what specific facts he hopes to elicit from these witnesses or how their deposition testimony is essential to oppose this motion.

Finally, as will be discussed, *infra*, without additional discovery, Plaintiff was able to present sufficient information to create a genuine dispute as to various material facts in response to Defendants' motion for summary judgment.

For these reasons, the request to defer ruling on this motion for summary judgment should be denied.

**B. Retaliation Claim**

Plaintiff's response contains an argument that Defendants retaliated against Plaintiff. However, the retaliation claim was dismissed on screening, and Plaintiff was not permitted to amend in this regard. (ECF Nos. 6, 34, 36.) Therefore, the court will not address this argument.

**C. Facts**

**1. Defendants' Version of Events**

According to Defendants, on January 29, 2021, at WSCC, 12 inmates were involved in a physical assault of a non-defendant correctional officer, and the investigation determined Plaintiff was one of those inmates. (ECF No. 52-1; Defs.' Ex. B (video surveillance footage, manually filed).) All of the inmates involved, including Plaintiff, are validated members of a Security Threat Group (STG)—the Sureños. (ECF Nos. 52-1, 52-3.) Once the inmates involved were identified, they were removed from their housing assignments, placed in restraints,

---

[1] Plaintiff asserts that the surveillance video was only recently given to his attorney, and he was not allowed to review the video until October 3, 2023, and was able to identify Stubbs as the officer who picked him up and forced him to the ground. However, Plaintiff has not filed a motion to amend to add Stubbs as a defendant or a formal motion to reopen discovery.

evaluated by medical staff, reclassified and transported to ESP. (ECF No. 52-1; ECF No. 52-4 at 1-4.) A medical report of incident, injury, or unusual occurrence form from WSCC on January 29, 2021, notes an evaluation/assessment was completed at 10:45. The subjective description states: "nothing happened." No injuries were noted, and no treatment was rendered. (ECF No. 52-4 at 4.)

Once Plaintiff arrived at ESP, Defendants contend that he refused to follow orders from staff, became agitated and attempted to step completely away from the wall that he was told to remain facing. Officers gained control of Plaintiff by placing him on the floor, and when he indicated he would comply with orders and offer no further resistance, he was moved to a holding cell. Once in the holding cell, Defendants maintain that an unclothed body search was conducted, and Plaintiff was secured without further incident. (ECF No. 52-5.) They assert that later that day, medical staff conducted routine checks on the inmates that had been transported from WSCC, and reported Plaintiff was alert and without pain or discomfort. (ECF No. 52-4.)

Defendants assert that photographs taken of Plaintiff after the January 29, 2021, incident, and later in February 2021, show no bruising, swelling or bleeding of Plaintiff's hands or wrists. (ECF No. 52-6.) In addition, they maintain that when Plaintiff was seen by ESP medical staff, there was no bruising, swelling or bleeding and his sensation was intact. (ECF No. 52-4 at 6.)

### 2. Plaintiff's Version of Events

Plaintiff disputes he had any involvement in the assault on the correctional officer at WSCC, and further disputes he was still affiliated with the Sureños. Instead, he maintains he attempted to look over the group of inmates to see what was going on, but he never attempted to assault the officer. (Pl. Decl., ECF No. 67 at 22-23 ¶¶ 3-5.) After the incident, Plaintiff asserts he was handcuffed and placed outside, and at approximately 6:00 p.m., correctional emergency

response team (CERT) officers from ESP came to transport Plaintiff and approximately nine other inmates to ESP. (*Id.* ¶ 7.) Officers Weiland and Johnson came to Plaintiff's cell and put the restraints on him extremely tight. (*Id.* ¶ 8.) Plaintiff claims he immediately asked them to loosen the restraints, to no avail. (*Id.* ¶ 9.) Plaintiff then asked Willhite to loosen his handcuffs, and Plaintiff says that Willhite responded: "Damn it looks like your hands will fall off soon, you won't have to worry about cuffs soon[.]" (*Id.* ¶ 11.) Plaintiff then asked Kleer and Searle to loosen the restraints, and Searle examined Plaintiff's hands and noted they were swollen. Kleer said, "the cuffs will come off when we get to Ely." (*Id.* ¶ 12.) Plaintiff remained handcuffed during the approximately eight-hour trip to ESP. (*Id.* ¶ 13.)

Plaintiff continued to notify officers that his handcuffs were too tight, he was in pain, his wrists were bleeding, and his hands were swollen and numb. He says Defendants told him they would shoot him if he kept messing with them. (*Id.* ¶ 14.) During the transport, Plaintiff began to sweat and hyperventilate. (*Id.* ¶ 15.)

When they arrived at ESP, Plaintiff was instructed to exit the van and line up, facing the wall, with his head touching the wall outside the property entrance. (*Id.* ¶ 16.) Plaintiff tried to notify officers he was feeling faint due to the tight handcuffs. His fingers and arms were numb, and his wrists were bleeding. (*Id.* ¶¶ 17-18.)

Plaintiff was feeling nauseous, dizzy, and could not breathe. He tried to inform Rigney that he needed medical attention, and Rigney responded, "so did that c/o you beat, shut up and face the wall." (*Id.* ¶ 19.) Plaintiff maintains that he complied with the order. (*Id.* ¶ 20.)

According to Plaintiff, at some point an officer approached him from behind, grabbed his arm and began to pull him backward off the wall. (*Id.* ¶ 21.) Then, without warning, he was lifted off the ground, flipped, pushed, and body slammed to the ground by officers. (*Id.* ¶ 23.) He

claims the force was so great that his leg shackle broke loose. (*Id*. ¶ 24.) During the take down, Plaintiff lost control of his bowels and urinated on himself, and screamed, "I can't breathe." (*Id*. ¶¶ 25-26.) Plaintiff insists he was not resisting, and the take down was unjustified. (*Id*. ¶ 27.)

Officers subsequently lifted Plaintiff off the ground, turned him around and carried him backward off of his feet into the property entrance cell. (*Id*. ¶ 28.) Plaintiff asserts that once he was inside the cell, Weiland, Kleer, and Johnson began punching and kicking him. (*Id*. ¶ 29.) Officers then removed his wrist restraints and left the cell. (*Id*. ¶ 31.) Plaintiff maintains there was a camcorder near the window pointed at him. (*Id*.)[2]

Officers then strip searched Plaintiff, and he was placed in a restraint chair. (*Id*. ¶¶ 33-35.) Plaintiff claims he immediately requested medical attention, but he was moved to Unit 7 and was not given an opportunity to send a request for medical for approximately two days. (*Id*. ¶¶ 36, 38, 39.)

**D. Eighth Amendment Excessive Force**

**1. Legal Standard**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. Amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

---

[2] Plaintiff manually filed a disc that was supposed to contain the camcorder footage, however, the court was not able to view any footage from that disc.

1    "[W]henever prison officials stand accused of using excessive physical force in violation

2    of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

3    faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

4    *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.*

5    *McKinney*, 394 F.3d 710, 711 (9th Cir.  2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th

6    Cir.  2003). "When prison officials maliciously and sadistically use force to cause harm,

7    contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*,

8    475 U.S. at 327). While *Whitley* used the phrase "maliciously and sadistically," an excessive

9    force claim does not require proof the officer enjoyed the use of force. *Hoard v. Hartman*, 904

10    F.3d 780 (9th Cir. 2018). Instead, the focus is on whether the officer had purpose to cause harm:

11    "[A]n officer who harms an inmate in part of a good-faith effort to maintain security has acted

12    constitutionally, but an officer who harms an inmate 'for the very purpose of causing harm,' …

13    has engaged in excessive force, provided that the other elements of excessive force have been

14    met." *Id.* at 788 (quoting *Whitley*, 475 U.S. at 321).

15    In determining whether the use of force is excessive, courts are instructed to examine

16    "the extent of the injury suffered by an inmate[;]" "the need for application of force, the

17    relationship between that need and the amount of force used, the threat 'reasonably perceived by

18    the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'"

19    *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

20    An inmate need not establish serious injury; however, the lack of serious injury is

21    relevant to the Eighth Amendment inquiry. *See Wilkins v.  Gaddy*, 130 S.Ct.  1175, 1178 (2010).

22    "The extent of injury may also provide some indication of the amount of force applied." *Id*.

23

10

1    "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to

2    intervene." *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

3        **2. The Handcuffs**

4        First, Plaintiff alleges that Weiland and Johnson deliberately put handcuffs on him too

5    tightly, and then Plaintiff asked Weiland, Johnson, Willhite, Kleer, Searle, and John Doe 1 to

6    loosen the handcuffs, but they all refused. As a result, Plaintiff claims his hands swelled, and he

7    experienced excruciating pain as the handcuffs cut off circulation to his hands.

8        Defendants assert Plaintiff was identified as a participant in the assault of a non-

9    defendant staff member at WSCC. When he was identified as such, he and the other inmates

10   were handcuffed and transported to ESP. They argue that photographs after the incident at

11   WSCC and then after he arrived at ESP show he had no injuries and nothing of medical concern.

12       Plaintiff raises a genuine dispute of material fact as to whether these Defendants used

13   excessive force in handcuffing him too tightly, forcing him to wear those handcuffs for

14   approximately eight hours, and in refusing to loosen the handcuffs. Plaintiff's declaration

15   specifically states that he continually asked to have the restraints loosened to no avail, that he

16   was in pain, his wrists were bleeding, and his hands were swollen and numb, and he began to

17   sweat and hyperventilate and felt faint. Plaintiff points out that the medical record stating that

18   "nothing happened" was from an evaluation done *before* he had been transported to ESP and had

19   been in the handcuffs for eight hours. Moreover, he asserts that the photographs taken on January

20   29, 2021, were also taken prior to his transport to ESP, and are not relevant to his injuries that

21   occurred after the fact. Finally, the photographs taken on February 24, 2021, nearly a month

22   later, do demonstrate redness and abrasions to his wrists. (ECF No. 52-6 at 6-15.)

23

The medical records also create a dispute as to whether Plaintiff suffered any injury related to the restraints. On January 31, 2021, Plaintiff sent a kite to medical stating he had been handcuffed for eight hours, and he had bloody wrists and numb thumbs. (ECF No. 52-4 at 8.) A medical record from February 5, 2021, less than a week after the incident, indicates Plaintiff complained of being beat up and that his wrists/ankles were hurt and his thumbs were numb. While no swelling or bruising was observed on the thumbs, healing abrasions were noted on the bilateral wrists and ankles. (ECF No. 52-4 at 6.) Plaintiff sent a kite on February 15, 2021, stating that his right hand was still numb, and he was experiencing a tingling and burning sensation and requested treatment. (ECF No. 52-4 at 9.) Plaintiff was seen on June 7, 2021, for complaints of right wrist pain and neuropathy, and a nerve conduction study was ordered, as well as ibuprofen for pain. (ECF No. 52-4 at 7, 10.)

Therefore, Defendants' motion for summary judgment should be denied with respect to the excessive force claim related to his restraints.

**3. Excessive Force at ESP**

Plaintiff alleges that once he arrived at ESP from WSCC, he was unnecessarily slammed to the ground and then he was taken to a cell where he was kicked and punched[3], all while he was restrained and did not pose any danger. He alleges that Kleer, Arozaga, Weiland, Rigney, Johnson, and Reubart participated in the use of force or witnessed the use of force and failed to intervene.

---

[3] In their reply, Defendants argue "this case does not involve those allegations," (ECF No. 70 at 3:20-21). However, the screening order clearly included these allegations in the Eighth Amendment excessive force claim. (*See* ECF No. 6 at 7: "Once Garcia arrived at ESP, Garcia was slammed to the ground and then taken to a cell where he was kicked and punched. Garcia was restrained throughout this use of force and did not pose any danger. … These allegations are sufficient to state a colorable claim on screening.")

Defendants argue that once he arrived at ESP, Plaintiff refused orders and acted in an agitated and aggressive manner, and once he agreed to cooperate and offer no further resistance, he was taken to a holding cell with no further incident. They assert Plaintiff was seen by medical staff once he arrived at ESP, which demonstrates there were no injuries.

First, with respect to the incident in the hallway, Plaintiff raises a genuine dispute of material fact as to whether there was excessive force. Preliminarily, Plaintiff submits the surveillance video footage which contradicts Defendants' position. The video shows that Plaintiff initially turned around from the wall, but immediately heeded instructions to turn around and face the wall. Contrary to Defendants' assertions, he did not continually attempt to come off of the wall. He can be seen fidgeting with his hands, but his head remained against the wall, and a jury could find this movement was consistent with his claim that his wrists/hands were injured, and he was feeling faint and dizzy. The video shows several officers standing behind Plaintiff, and at one point, an officer approached Plaintiff from behind and grabbed his arm while another officer then picked him up, pushed him into the wall, turned him around and brought him quickly to the ground. Plaintiff was subsequently picked up by several officers and turned around, and brought backwards down the hallway and into a cell.

Second, with respect to the alleged kicking and punching in the cell, Defendants do not address this aspect of Plaintiff's claim other than to say that after Plaintiff agreed not to resist, he was taken to the cell without incident. Plaintiff, on the other hand, presents statements in his declaration that once he was taken into the cell, Weiland, Kleer, and Johnson began punching and kicking him. (ECF No. 67 at 25 ¶ 29.) This is sufficient to create a genuine dispute of material fact as to whether excessive force was used once he was placed in the holding cell.

1    In sum, summary judgment should be denied with respect to the Eighth Amendment

2  excessive force claims that are alleged to have occurred once Plaintiff arrived at ESP.

3  **E. Eighth Amendment Deliberate Indifference to Serious Medical Needs**

4      **1. Legal Standard**

5    "The government has an 'obligation to provide medical care for those whom it is

6  punishing by incarceration,' and failure to meet that obligation can constitute an Eighth

7  Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th

8  Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

9    A prisoner can establish an Eighth Amendment violation arising from deficient medical

10  care if he can prove that prison officials were deliberately indifferent to a serious medical need.

11  *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two

12  elements: "the seriousness of the prisoner's medical need and the nature of the defendant's

13  response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other*

14  *grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698

15  F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

16  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further

17  significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at

18  1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

19    If the medical need is "serious," the plaintiff must show that the defendant acted with

20  deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

21  omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

22  1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or

23  even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action

under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

**2. Analysis**

This claim is based on allegations that Plaintiff asked Weiland, Johnson, Willhite, Kleer, Searle, and John Doe 1 to loosen his handcuffs and provide him with medical treatment, but they refused. Then, once he was at ESP, Plaintiff alleges he continued to ask for medical treatment, and Kleer, Arozaga, Reubart, Weiland, Rigney, Willhite, and Johnson refused to provide him with any treatment. Plaintiff alleges that as a result of the lack of treatment, he suffered nerve damage to his right hand.

Defendants argue there is no evidence Plaintiff ever had a serious medical need. They assert photographs were taken of Plaintiff right after he was involved in the assault on the correctional officer at WSCC, and a month later when Plaintiff started complaining about injuries, and neither show any bruising, bleeding, or swelling as alleged. They further argue Plaintiff was seen by medical staff prior to leaving WSCC, after arriving at ESP, and after he kited regarding his alleged injuries, and none show his injuries.

Next, Defendants argue they were not deliberately indifferent because Plaintiff was seen by medical following the events that led to his allegations. Moreover, they contend based on the photographs and alleged symptoms, this is not a situation where a lay person would have been on notice of an objective medical need that required medical attention. They maintain he received care because he was taken to the infirmary after the handcuffing.

Plaintiff's medical records and his declaration create a genuine dispute of material fact as to whether he had a serious medical need as a result of the restraints. To the extent Defendants argue that Plaintiff received medical attention at both WSCC and ESP, Plaintiff was seen at WSCC *before* he was transported to ESP in restraints for over eight hours. Plaintiff's declaration maintains that he continually asked for medical attention, to no avail. There is a medical record dated January 30, 2021, that states Plaintiff was seen "at property from train" at 3:03, and he had no complaints of pain or discomfort (ECF No. 52-4 at 5). However, it is unclear what this evaluation entailed and when it took place in relation to the events alleged in this action. Moreover, Plaintiff's declaration states he did not receive any treatment. To the extent Defendants argue this was not a condition of which a lay person would have been aware, Plaintiff's declaration states that he was in obvious medical distress and his wrists were bleeding. Defendants contend the video footage does not show Plaintiff's wrists bleeding, but the court cannot make that observation from the video footage, and Plaintiff is correct that some of the photographs taken nearly a month later do show redness and abrasions on his wrists.

Taking these facts in the light most favorable to Plaintiff, a fact finder could conclude both that Plaintiff suffered from a serious medical need and that need was obvious to the Defendants and that they failed to act to ensure he received any medical treatment.

**E. Qualified Immunity**

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

The court has already concluded that taking the facts in the light most favorable to Plaintiff, a jury may determine that Plaintiff's rights were violated under the Eighth Amendment. Moreover, these rights were clearly established. *See Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022) (citation omitted, clearly established that denying, delaying or intentionally interfering with medical treatment can violate the Constitution); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (the Eighth Amendment is violated when an officer acts "maliciously and sadistically to cause harm"). Therefore, Defendants are not entitled to qualified immunity.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order: (1) **DENYING** Plaintiff's counsel's request to defer ruling on Defendants' motion for summary judgment under Rule 56(d); and (2) **DENYING** Defendants' motion for summary judgment (ECF No. 50). The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: November 1, 2023

_____
Craig S. Denney
United States Magistrate Judge